Pier 30 Associates, Appellant *v.* The School District of Philadelphia, Appellee.

Argued April 11, 1985, before Judges CRAIG and COLINS and Senior Judge KALISH, sitting as a panel of three.

*Daniel B. Pierson V*, with him, *Anastasius Efstratiades, Pierson, Cameron & Morris, P.C.*, for appellant.

*Eugene F. Brazil*, General Counsel, for appellee.

OPINION BY JUDGE CRAIG, May 24, 1985:

Pier 30 Associates appeals an order of Judge GEL-FAND of the Court of Common Pleas of Philadelphia County which upheld the Philadelphia School District's denial of Pier 30's appeal from the imposition of local use and occupancy tax on tennis courts constructed and operated by Pier 30 on property owned by the city, leased by the Philadelphia Port Corporation (a municipal agency), and sublet to Pier 30 Associates.

The public status of the property title is not in dispute. The only question before us is whether Pier 30's use of the property is for a "public purpose," thereby

exempting it from taxation under the General County Assessment Law,[1] which provides in part:

> Section 5020-204. Exemptions from taxation.
> (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
> . . . .
>
> (7) all other property *used for public purposes,* with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, but this shall not be construed to include property otherwise taxable which is owned or held by an agency of the Government of the United States nor shall this act or any other act be construed to exempt from taxation any privilege, act or transaction conducted upon public property by persons or entities which would be taxable if conducted upon nonpublic property regardless of the purpose or purposes for which such activity occurs, even if conducted as agent or lessee of any public authority. . . . (Emphasis added.)

The taxpayer has the burden of establishing exemption from taxation. *Lehigh Valley Cooperative Farmers v. Bureau of Security Employment, Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982). Statutory provisions exempting property from taxation are strictly construed. *Matter of Tax Assessment of Real Estate of Greater Erie Economic Development Corp.,* 61 Pa. Commonwealth Ct. 144, 433 A.2d 568 (1981). Entitlement to tax exemption is a mixed question of law and fact, and absent any abuse of discretion or lack of supporting evidence, we will

---

[1] Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§5020-101 through 5020-602.

not disturb the decision of the trial court. *Appeal of Planned Parenthood Association of Bucks County,* 55 Pa. Commonwealth Ct. 195, 423 A.2d 760 (1980).

The record[2] establishes that the tennis courts are open to the public, are used for the recreation of the public, and are located on public property. Pier 30 argues that those facts alone establish a public purpose entitling them to tax exemption, and relies on *Martin v. City of Philadelphia,* 420 Pa. 14, 215 A.2d 894 (1966), where the Supreme Court held that leasing a municipal stadium to privately owned major league sports franchises was a public purpose rather than a private enterprise. However, *Martin* did not

---

[2] The factual record consists of some correspondence between the parties, a copy of the lease agreement between Philadelphia Port Corporation and Pier 30 Associates, and a stipulation of facts which provides:

Counsel for Appellant and Counsel for Appellee Stipulate to the following facts:

(1) Appellant, Pier 30 Associates, is a partnership for profit engaged in the operation of tennis courts on Pier 30 on the Delaware River.

(2) Pier 30 is owned by the City of Philadelphia, leased to the Philadelphia Port Corporation and subleased to Appellant.

(3) The lease agreement between Appellant and the Philadelphia Port Corporation is attached hereto as Exhibit "A" and made a part hereof.

(4) Membership in Appellant's tennis complex is granted to any person upon payment of the annual membership fee. Payment of the annual fee is the only requirement for membership. Any person regardless of race, religion, sex or national origin may become a member.

(5) Solicitation of membership is made to the general public through advertising in media of general circulation.

(6) Members may reserve a court for tennis seven days in advance.

(7) Non-members may reserve a court for tennis twenty-four hours in advance and may use it upon payment of an hourly rate.

arise as a claim of exemption from local taxation, as here, but as a taxpayer challenge to a city ordinance authorizing a loan of $25,000,000 for construction of the stadium. *See also Bernstein v. City of Pittsburgh,* 366 Pa. 200, 77 A.2d 452 (1951) (City of Pittsburgh authorized to use public funds for construction of open-air auditorium in city park and lease it during summer months to private corporation for presentation of light opera). The mere fact that the tennis courts provide recreational facilities to the public is not sufficient to establish a public purpose which would exempt them from the school district's use and occupancy tax. Ample judicial authority supports Judge GELFAND's holding that the lessee must also establish that its use of public property furthers the function of a governmental agency.

In *Public Parking Authority v. Board of Property Assessment, Appeals and Review,* 377 Pa. 274, 105 A.2d 165 (1954), the Supreme Court upheld the real property tax exemption of those portions of a public parking garage leased from the Pittsburgh Parking Authority and operated by a private company as *parking facilities;* however, other portions of the garage property which were leased for various commercial and retail uses[3] were not exempt from the tax.

> But it thus appears that, unlike the leases of the garages and parking lots to effectuate the purpose of providing an "efficient operation of off-street parking facilities," these commercial rentals are authorized merely for the purpose of assisting in "defraying the expenses of the authority." The operation of the stores in the garage . . . does not constitute a use incidental

---

[3] Commercial establishments in the garage property included a restaurant, a tailor, a photography shop, a florist and an electronic protective agency.

to the public purpose of providing "off-street parking facilities" for which purpose alone the privilege of tax exemption was granted by the Parking Authority Law.

*Id.* at 283, 105 A.2d at 169.

Similarly, in *May Department Stores v. City of Pittsburgh,* 31 Pa. Commonwealth Ct. 398, 376 A.2d 309 (1977), we held that a public parking garage, leased from the Parking Authority of Pittsburgh and operated by a private concern, was used for a public purpose and therefore exempt from the business privilege tax under section 5020-204(7). We noted that an activity may be tax exempt even if it is proprietary and operated for profit. *Cf. Reading Municipal Authority v. Schuylkill Valley School District,* 4 Pa. Commonwealth Ct. 300, 286 A.2d 5 (1972) (aircraft hangers at airport leased by municipal authority to private party who in turn leased space to individual owners of aircraft, were not used for a public purpose and therefore were not exempt from local taxation).

Pier 30 relies on *City of New Castle v. Lawrence County,* 353 Pa. 175, 44 A.2d 589 (1945), where the Supreme Court exempted from local taxation a privately run restaurant and amusement concessions located on a public golf course owned and operated by the city. However, as the court in *City of New Castle* recognized,

> [t]hese buildings are part of the park equipment available for the entertainment and refreshment of the public visiting the park, and promote and facilitate the enjoyment of the park *for park purposes.* The Department of Parks and Public Property of the City of New Castle has control over the portions of the park in which these licensees or lessees operate. (Emphasis added.)

*Id.* at 182, 44 A.2d at 593. *See also In the Matter of Spectrum Arena, Inc.,* 330 F. Supp. 125 (E.D. Pa. 1971) (where lease explicitly stated city's objective to provide recreational facilities for public, private lessee's for profit operation of city-owned arena for cultural and sporting events held to serve a public purpose entitled to tax exemption).

Conceivably, the City of Philadelphia, as owner of the property, could have selected a private contractor to effectuate the provision of recreational facilities or some other city purpose; in fact, the city did not do so. Pier 30's lease is not with the city, but with the city's lessee.

Unlike *City of New Castle,* the sublessees here have presented no evidence that the tennis courts will promote or facilitate the purpose of the Philadelphia Port Corporation from whom Pier 30 leases the property, nor that the operation of the tennis courts is "reasonably necessary to the functioning of the [port corporation] as a public instrumentality." *Reading,* 4 Pa. Commonwealth Ct. at 307, 286 A.2d at 9.

We find no merit in Pier 30's further contention that, because the tennis courts are permanent improvements which will become the property of the city upon expiration of the lease, the property is tax exempt. Pier 30 cites *Costar Marine Tax Assessment Appeal,* 33 Pa. Commonwealth Ct. 447, 382 A.2d 156 (1978), where we held that improvements constructed by a lessee on government owned real property were taxable to the lessee because he intended to remove those improvements upon expiration of the lease. However, contrary to Pier 30's contention, the situation presented by the facts of this case does not necessitate the converse rule of law. Although the permanency of improvements may be a factor for the court to consider in determining whether the use of those improve-

ments is for a public purpose, it is not conclusive. As noted, the key to exemption is evidence establishing that the lessee's use of the public property is furthering the purpose of the governmental agency from which the lessee rents the property. In the absence of such evidence, as here, we must conclude that the property is not serving a public purpose and is not tax exempt.

Accordingly, we affirm Judge GELFAND's sound decision.

ORDER

Now, May 24, 1985, the order of the Court of Common Pleas of Philadelphia County, Civil Trial Division, at August Term, 1978, No. 2093, dated September 16, 1979, is affirmed.